Jack Silver, Esq. SB #160575
Jsilverenvironmental@gmail.com
LAW OFFICE OF JACK SILVER
708 Gravenstein Hwy No. # 407
Sebastopol, CA 95472
Tel. (707) 528-8175

David J. Weinsoff, Esq. SB #141372
David@weinsofflaw.com
LAW OFFICE OF DAVID J. WEINSOFF
138 Ridgeway Avenue
Fairfax, CA 94930
Tel. (415) 460-9760

Attorneys for Plaintiff:
California River Watch

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH, an IRC Section 501(c)(3), non-profit, public benefit corporation,<br><br>      Plaintiff,<br> v.<br><br>RON RUBIN WINERY and DOES 1 through 5, Inclusive,<br><br>      Defendants. | Case No: 3:23-cv-01368<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, AND DECLARATORY RELIEF**<br>(Environmental – Clean Water Act 33 U.S.C. §§ 1251 *et seq.*) |

Plaintiff, California River Watch ("RIVER WATCH"), hereby bring this civil action pursuant to the Federal Water Pollution Control Act, also known as the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq*.

**I.** **INTRODUCTION**

1. This action is a citizen suit for injunctive relief, civil penalties, and remediation brought against defendants RON RUBIN WINERY and DOES 1 through 5, Inclusive, (collectively hereafter, "Defendants"), for failing to apply for and obtain coverage under (or an approved exemption from) a permit issued pursuant to the National Pollution Discharge Elimination System ("NPDES"), 33 U.S.C.

§§ 1311, 1342. In California, a non-exempt industrial facility such as that of Defendants in Sonoma County discharging regulated storm water and non-storm water from their property must obtain an individual NPDES permit from the North Coast Regional Water Quality Control Board ("RWQCB"), or comply with the terms detailed in NPDES *General Permit For Storm Water Discharges Associated With Industrial Activities*, No. CAS000001, State Water Resources Control Board ("SWRCB") Order No. 2-14-0057-DWQ (the "IGP").

2. On or about January 10, 2023, RIVER WATCH determined on information and belief that Defendants failed to obtain coverage under an individual NPDES permit or were in compliance with the requirements of the IGP, and provided its initial Notice of Defendants' violations of the CWA to (1) the Administrator of the United States Environmental Protection Agency ("EPA"), (2) EPA's Regional Administrator for Region Nine, (3) the Executive Director of the SWRCB, and (4) to Defendant RON RUBIN WINERY as required by the CWA, 33 U.S.C. § 1365(b)(1)(A). A true and correct copy of RIVER WATCH's 60-Day Notice of Violations ("NOTICE") is attached as **EXHBIT A** and incorporated by reference. Defendant RON RUBIN WINERY, the SWRCB, and the Regional and National Administrators of the EPA all received the NOTICE.

3. More than sixty (60) day have passed since RIVER WATCH's NOTICE were served on Defendant RON RUBIN WINERY, the SWRCB, and the Regional and National EPA Administrators. RIVER WATCH is informed and believes, and thereupon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this Complaint. This action's claim for civil penalties is not barred by any prior administrative penalty under CWA § 309(g), 33 U.S.C. § 1319(g).

**II.   JURISDICTION**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), and 33 U.S.C. § 1365(a) (CWA citizen suit jurisdiction). The relief requested is authorized pursuant to 28 U.S.C. §§ 2201-2202 (declaratory relief), 33 U.S.C. § 1365(a) (injunctive relief), and 33 U.S.C. § 1319(d) (civil penalties).

5. Venue is also proper because Defendants' CWA violations as alleged in this Complaint have occurred and are ongoing within this District. 33 U.S.C. §1365(c)(1).

### III. DIVISIONAL ASSIGNMENT

6. Defendants and their discharging facility reside/are located, and the events or omissions giving rise to RIVER WATCH's claims occurred in Sonoma County, California.

### IV. PARTIES TO THE ACTION

7. RIVER WATCH is now, and at all times relevant to this Complaint was, an Internal Revenue Code § 501(c)(3) non-profit, public benefit corporation, organized under the laws of the State of California with headquarters located in Sebastopol, California, with a mailing address of 290 South Main Street, #817, Sebastopol, California 95472. The specific purpose of RIVER WATCH is to protect, enhance, and help restore surface waters and groundwaters of California, including rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora, and fauna, and to educate the public concerning environmental issues associated with these environs. Members of RIVER WATCH have interests in the waters and watersheds which are or may be adversely affected by Defendants' violations of the CWA as alleged in this Complaint. Said members may use the effected waters and watershed areas for recreation, sports, fishing, swimming, hiking, photography, nature walks and/or the like. Furthermore, the relief requested herein will redress the injury in fact, likelihood of future injury, and interference with the interests of said members. Defendants' ongoing violations of the IGP and the CWA will cause irreparable harm to members of RIVER WATCH for which they have no plain, speedy or adequate remedy.

8. RIVER WATCH is informed and believes, and on such information and belief alleges, that Defendant RON RUBIN WINERY is now, and at all times relevant to this Complaint was the owner and operator of a business identified under Standard Industrial Classification ("SIC") Code 2084 ("Wine, Brandy and Brandy Spirits") located at 5220 Ross Road, Sebastopol, California (the "Facility").

9. RIVER WATCH is informed and believes, and on such information and belief alleges, that Defendants DOES 1 through 5, Inclusive, respectively, are now, and at all times relevant to this Complaint were persons, partnerships, corporations and entities who are, or were, responsible for, or in some way contributed to, the violations which are the subject of this Complaint, and are or were, persons, partnerships, corporations and entities who hold a major ownership interest in the real

property underlying the Facility at 5220 Ross Road in Sebastopol, identified as Sonoma County Assessor's Parcel No. 084-160-003-000. The names, identities, capacities, and functions of Defendants DOES 1 through 5, Inclusive, are presently unknown to RIVER WATCH. RIVER WATCH shall seek leave of court to amend this Complaint to insert the true names of said DOES defendants when the same have been ascertained.

**V.   CLEAN WATER ACT**

10. Congress declared that the CWA was designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters" through federal and state cooperation, and to develop and implement "programs for preventing, reducing, or eliminating the pollution of navigable waters and grounds waters." 33 U.S.C. §§ 1251(a), 1252(a). In furtherance of these goals, the CWA prohibits all discharges except those in compliance with an NPDES permit. 33 U.S.C. §§ 1311, 1342. The EPA promulgates regulations to implement the NPDES permitting system at 40 C.F.R. §§ 122-129.

11. Pursuant to the requirements of the CWA, the SWRCB developed a *General Permit for Stormwater Discharges Associated with Industrial Activity* ("IGP") within the State of California. 33 U.S.C. § 1342; 40 C.F.R. §122.26; NPDES Permit No. CAS000001, SWRCB Order No. 92-12-DWQ, with the most recent substantive amendments under Order No 2014-0057-DWQ. All facility operators subject to permitting not covered under another NPDES permit must apply to the SWRCB through submission of an NOI to obtain coverage, or through a No Exposure Certification ("NEC") or Notice of Non-Applicability ("NONA") for exemption from coverage under the IGP. *Id*. Failure to do so, and failure to comply strictly with all permit requirements, violates the CWA. *Id*., *see also* IGP § XXI.Q. This Section IV of the Complaint details the requirements of the IGP.

12. The IGP requires, among other requirements, that the discharger (1) prepare, "certify and submit" an Annual Report on the year's discharge activities including compliance with the CWA and IGP (IGP § XVI), (2) perform visual observations and conduct sampling and analysis to monitor any discharges (IGP § XI), and (3) prepare a comprehensive site-specific Storm Water Pollution Prevention Plan ("SWPPP") (IGP § X). Where a facility operator fails to "comply with all standard conditions [of the] General Permit," it shall "constitute [] a violation of the [CWA] and the Water

1  Code and is grounds for enforcement action and/or removal from General Permit coverage." IGP § XXI.A; 33 U.S.C. §1342.

13. Under the CWA, dischargers are required, by July 15 of each year, to submit an Annual Report, based on laboratory reports, summarizing the year's monitoring and sampling, and addressing any deficiencies in those required actions. IGP § XVI. Failure to submit an adequate Annual Report violates the IGP and subsequently the CWA. IGP § XXI.A; 33 U.S.C. § 1342.

14. Pursuant to IGP § XI.B, dischargers are required to monitor all discharges to ensure compliance with the provisions and purpose of the CWA. The IGP similarly requires extensive monitoring of discharges, including visual observations, sampling, and analysis. IGP § XI. The IGP mandates that dischargers "collect and analyze storm water samples from two (2) Qualifying Storm Event ("QSEs") within the first half of each reporting year (July 1 to December 31) and two (2) QSEs within the second half of each reporting year (January 1 to June 30)" "from each drainage area at all discharge locations." IGP §§ XI.B.2 (first quote), XI.B.4 (second quote). Compliance group participants and dischargers qualifying for "Representative Sampling Reduction" have reduced sampling of QSEs. IGP §§ XI.B.3; XI.C.4. and XI.C.7. Dischargers are required to "submit all sampling and analytical results for all [samples] via [the Storm Water Multiple Application and Report Tracking System ("SMARTS")] within 30 days of obtaining all results for each sampling event." IGP § XI.B.11.a. Failure to comply with these IGP provisions violates the CWA. IGP § XXI.A. ("Permit noncompliance constitutes a violation of the [CWA] and the Water Code and is grounds for enforcement action" or NPDES coverage termination); 33 U.S.C § 1342.

15. The IGP also requires dischargers to "develop and implement a site-specific SWPPP for each industrial facility covered by [the] General Permit." IGP §§ I.I.54, X.A., *see* Appendix 1. The SWPPP must contain (1) the facility name and contact information, (2) a site map, (3) a list of industrial materials, (4) descriptions of potential pollution sources, (5) an assessment of those sources, (6) minimum Best Management Practice ("BMPs"), (7) advanced BMPs if applicable, (8) a monitoring implementation plan, (9) an annual evaluation, and (10) dates when the SWPPP was prepared and amended. IGP § X.A. All of this information must be certified and submitted via SMARTS "within 30 days" of any "significant revision(s)" to the SWPPP, or no more than every 3 months in the

reporting year where the revisions are not "significant." IGP §§ X.B.2., X.B.3. Missing or incomplete information requires a revision of the SWPPP.

    a.    Among the many requirements for a SWPPP, a discharger "shall prepare a site map" that includes "[t]he facility boundary, storm water drainage areas within the facility boundary," and portions of any drainage area impacted by discharges from surrounding areas," "[l]ocations and descriptions of structural control measures," "[i]dentification of all impervious areas," locations of exposed materials, and "[a]reas of industrial activity subject to this General Permit." IGP § X.E3.; IGP Attachment D § F.2 (listing requirements for site maps).

    b.    All dischargers are required to describe and assess each potential pollutant source in their SWPPP. IGP § X.G. "The Discharger shall ensure the SWPPP describes each industrial process," "each material handling and storage area," "all industrial activities that generate a significant amount of dust or particulate that may be deposited within the facility boundaries," a "list of any industrial materials that have spilled or leaked," all non-storm water discharges, and "the facility locations where soil erosion may" occur. IGP § X.G.1. The discharger shall also "ensure that the SWPPP includes a narrative assessment of all areas of industrial activity with potential pollutant sources." IGP § X.G.2.a. The discharger's assessment of these sources must include, among other things, the location, type, quantity and physical characteristics of the pollutant, the potential for all exposure, all sampling and inspection records, and the potential effectiveness of the current BMPs to reduce or prevent pollutants in storm water discharges. IGP § X.G.2.a.

    c.    The SWPPP must also "implement and maintain" the minimum BMPs described in the IGP (IGP § X.H.1) and any advanced BMPs "necessary to reduce or prevent discharges of pollutants" (IGP § X.H.2). The discharger shall "identify and describe" the implemented BMPs on which it relies to reduce discharges. IGP § X.C.1.b. These BMPs descriptions shall include:

    i.    The pollutant(s) the BMPs are designed to reduce or prevent…;

    ii.    The frequency, time(s) of day, or conditions where the BMPs are scheduled for implementation;

    iii.    The locations within each area of industrial activity or industrial pollutant source where the BMPs shall be implemented;

  iv. The individual and/or position responsible for implementing the BMPs;

  v. The procedures… and/or instructions to implement the BMPs effectively;

  vi. The equipment and tools necessary to implement the BMPs effectively; and,

  vii. The BMPs that may require more frequent visual observations beyond the monthly visual observations as described in IGP § XI.A.1. IGP § X.H.4.a. The minimum BMPs that are required in the SWPPP include Good Housekeeping (IGP § X.H.1.a), Preventative Maintenance (IGP § X.H.1.b), Spill and Leak Prevention and Response (IGP § X.H.1.c), Material Handling and Waste Management (IGP § X.H.1.d.), Erosion and Sediment Controls (IGP § X.H.1.e), Employee Training Programs (IGP § X.H.1.f), and Quality Assurance and Record Keeping (IGP § X.H.1.g). The advanced BMPs that may be implemented as necessary include Exposure Minimization (IGP § X.H.2.b.i), Storm Water Containment and Discharge Reduction (IGP § X.H.2.b.ii), Treatment Control (IGP § X.H.2.b.iii), or other BMPs "necessary to meet effluent limitations of this General Permit." (IGP § X.H.2.b.iv).

  d. The SWPPP must be signed and certified as "true, accurate, and complete". IGP § XXI.L. An incomplete or inconsistent SWPPP violates the IGP and subsequently the CWA. IGP §§ XXI.A; 33 U.S.C. § 1342.

16. The "General Permit requires control of pollutant discharges using [Best Available Technology Economically Achievable ("BAT")] and [Best Conventional Pollutant Technology ("BCT")] to reduce and prevent discharges of pollutants, and any more stringent effluent limitations necessary for receiving waters to meet applicable water quality standards." IGP § I.D.32. "Dischargers shall implement BMPs that comply with BAT/BCT requirements of this General Permit to reduce or prevent discharges of pollutants in their storm water discharge in a manner that reflects best industry practice considering technological availability and economic practicability and achievability." IGP § V.A.; *see also* 40 C.F.R. § 125.3(a)(2)(i)-(v); (NPDES Permits must include technology-based treatment requirements).

17. The "General Permit incorporates discharge prohibitions contained in water quality control plans [Basin Plans], as implemented by the [Regional Water Quality Control] Boards." IGP § I.C.29.

18. Under the CWA, "any citizen may commence a civil action" "against any person…who is alleged to be in violation of (A) an effluent standard or limitation under [the CWA] or (B) an Order issued by …a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1). "No action may be commenced…prior to sixty days after the plaintiff has given notice of the alleged violation to (i) the Administrator [of the EPA], (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(A). By including a citizen suit provision in the CWA, Congress ensured that the purposes and requirements of the CWA would be enforced, either by the United States government or by concerned citizens.

19. In furtherance of the water preservation goals established by the CWA, the citizen suit provision confirms the district court's jurisdiction "to apply any appropriate civil penalties under section 1319(d)." 33 U.S.C. § 1365(a). Section 1319(d) declares that "[a]ny person who violates…any permit condition or limitation implementing any of such sections in a[n NPDES] permit… shall be subject to a civil penalty not to exceed $[64,618.00] per day for each violation." 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4; IGP § XXI.Q.1.

20. Violations of provisions of the IGP, including those detailed below, constitute violations of the CWA and are subject to civil penalties. IGP § XXI; 33 U.S.C. §§ 1319(d), 1342; 40 C.F.R. §§19.1 – 19.4.

**VI.    FACTUAL ALLEGATIONS WHICH GIVE RISE TO THE CLAIMS**

21. RIVER WATCH attempted to inform Defendant RON RUBIN WINERY of the requirements imposed under the IGP on four (4) separate occasions:

   a. On November 28, 2022, RIVER WATCH through its counsel sent Defendant RON RUBIN WINERY a "Letter of Inquiry" via certified mail, that was received and signed for by RON RUBIN WINERY on December 6, 2002, requesting "documentation that you submitted the application for coverage or exemption from coverage under the [IGP] or have filed an application for an individual NPDES permit for your stormwater discharges." Neither RIVER WATCH nor its counsel received a response from said Defendant to the Letter of Inquiry prior to the filing of this Complaint.

b. On January 10, 2023, RIVER WATCH through its counsel sent Defendant RON RUBIN WINERY the NOTICE identified in Paragraph 2 of this Complaint, a formal "Notice of Violations and Intent to File Suit Under the Federal Water Pollution Control Act (Clean Water Act)" via certified mail that was received by Defendant RON RUBIN WINERY on January 12, 2023, alleging on-going non-compliance with the CWA's requirements for the regulation of industrial stormwater discharges. Neither RIVER WATCH nor its counsel received a response from said Defendant to the Notice Letter prior to the filing of this Complaint.

c. On February 27, 2023, RIVER WATCH through its counsel sent Defendant RON RUBIN WINERY a third letter via certified mail that was received and signed for by Defendant RON RUBIN WINERY on March 1, 2023, asserting its continuing efforts to resolve its concerns regarding on-going non-compliance with the stormwater requirements in the CWA, and reiterating its statement in the cover letter to the NOTICE: 'California River Watch prefers compliance through cooperation rather than litigation and would welcome the opportunity to work with you in this regard'. To this end, please contact this office prior to the expiration of the 60-day notice period to discuss this matter." Neither RIVER WATCH nor its counsel received a response from Defendant to this letter prior to the filing of this Complaint.

d. On March 7, 2023, RIVER WATCH through its counsel telephoned Defendant RON RUBIN WINERY at its place of business, (707) 887-8130, the telephone number on its website (ronrubinwinery.com), leaving a message with a receptionist that included a request for a return telephone call. RIVER WATCH counsel did not receive a response from said Defendant prior to the time of filing this Complaint.

22. RIVER WATCH alleges Defendants are in on-going violation of CWA § 402(a) through: (1) their failure to apply for, obtain, and comply with the terms and conditions of an individual NPDES permit; or (2) their failure to submit a Notice of Intent ("NOI") seeking coverage under the IGP. Either permit would address the discharges of stormwater and non-stormwater relating to industrial services and operations taking place at the Facility.

23. RIVER WATCH, following its investigation and consultation with experts, contends that Defendants have failed and continue to fail to conduct industrial operations at the Facility with

coverage under, and in compliance with, any of the requirements under the CWA including, but not limited to, eliminating the threat of pollution from those industrial operations.

24. A review of publicly available information and eyewitness reports reveals that industrial operations at the Facility are conducted both indoors and outdoors where they are subject to rain events. As there is no compliance by the Defendants with standard CWA permitting requirements, there is no stormwater sampling and monitoring or Best Management Practices ("BMPs") implemented at the Facility that would control the discharge of pollutants and ensure no unlawful discharge of pollutants from the Facility.

25. Prior to initiating operations, Defendants were required under the IGP to register for coverage for the Facility by certifying and submitting permit registration documents ("PRDs") via SMARTS which consist of: (1) a completed NOI and signed certification statement; (2) a copy of a current Site Map from the Storm Water Pollution Prevention Plan ("SWPPP"); (3) a SWPPP, and (4) payment of the appropriate Annual Fee (*see* IGP § II.B.1.b.)   RIVER WATCH contends Defendants have failed and continue to fail to comply with this requirement of the IGP.[1]

---

[1] Additional requirements under the IGP include, but are not limited to, the following:

For SMARTS electronic account management and security reasons, as well as enforceability of the IGP, Defendants' Legally Responsible Person ("LRP") for the Facility in seeking coverage under the IGP was required to certify and submit all Permit Registration Documents ("PRDs") for NOI coverage prior to the beginning of operations (*see* IGP § II.A.). Defendants have failed and continue to fail to comply with this requirement of the IGP.

All other documents were required to be certified and submitted via SMARTS by Defendants' LRP or by their Duly Authorized Representative in accordance with the Electronic Signature and Certification Requirements (*see* IGP § XXI.K). Defendants have failed and continue to fail to comply with this requirement of the IGP.

When applying for its NOI coverage for the Facility under the IGP, Defendants were required to submit data and/or information, prepared by a Qualified Industrial Storm Water Practitioner ("QISP"), demonstrating that: (1) the Facility has eliminated all exposure to storm water of the pollutant(s) for which the water body is impaired, has documented the procedures taken to prevent exposure onsite, and has retained such documentation with the SWPPP at the Facility; (2) the pollutant(s) for which the water body is impaired is/are not present at the Facility, and that Defendants have retained documentation of this finding with the SWPPP at the Facility or; (3) the discharge of any listed pollutant will not cause or contribute to an exceedance of a water quality standard.  This is demonstrated either if the Facility complies with water quality standards at the point of discharge, or

26. In the absence of PRDs, RIVER WATCH's concern for effective storm water or process water pollution control extends to the following:

    a. If a pond receiving industrial stormwater exists on the Facility site that may discharge to waters of the United States, this pond must be sufficiently sized and constructed to prevent overflows or subsurface releases.

    b. "Erosion and Sediment Controls" must be put in place at the Facility to ensure roadways used for the trucking of supplies to, from, and within the Facility are constructed and maintained to properly control stormwater discharges from the Facility as required by the IGP.

    c. Defendants must conduct a comprehensive potential pollutant analysis, including an analysis of transportation-related services to and from the Facility.

27. In addition to the pollution controls imposed under CWA permitting, the RWQCB has established water quality standards applicable to facilities such as the Facility. The RWQCB's Water Control Plan or "Basin Plan" includes both numeric and narrative standards.

### VII. CLAIM FOR RELIEF

**Violations of the CWA Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. § 1365(a)(1)(B) – Failure to Comply with CWA Requirements for Industrial Discharges and Violation of NPDES Permit No. CAS000001, the IGP.**

28. Each and every allegation set forth in this Complaint is incorporated herein by reference.

29. Each day since January 10, 2018, Defendants have failed and continue to fail to comply with the NPDES permitting requirements of the CWA, and in particular the IGP, because Defendants have failed and continue to fail to comply with the substantive storm water IGP requirements detailed in Paragraphs 10 through 20 of this Complaint. These violations are on-going.

30. Each day since January 10, 2018, on which unauthorized storm water discharges, non-storm water discharges ("NSWDs"), liquids, or materials other than storm water are discharged from the

---

if there are sufficient remaining waste load allocations in an approved TMDL and the discharge is controlled at least as stringently as similar discharges subject to that TMDL (*see* IGP § VII.B). Defendants have failed and continue to fail to comply with this requirement of the IGP.

Facility either directly or indirectly to waters of the United States, Defendants are violating the IGP and the CWA. These violations are on-going.

31. Each day since January 10, 2018, on which storm water discharges and/or NSWDs containing pollutants that cause or threaten to cause pollution, contamination, or nuisance as defined in section 13050 of the California Water Code are discharged from the Facility, Defendants are violating the IGP and thus the CWA. These violations are on-going.

32. Each day since January 10, 2018, on which discharges from the Facility violate any discharge prohibitions contained in the applicable Regional Water Quality Control Board's Basin Plan, or statewide water quality control plans and policies, Defendants are violating the IGP and thus the CWA.

33. Noncompliance with the IGP constitutes a violation of the CWA. IGP § XXI.A; 33 U.S.C. § 1342. These violations are on-going.

## VIII. RELIEF REQUESTED

Wherefore, RIVER WATCH respectfully requests that this Court grant judgment providing the following relief:

34. Declare Defendants to have violated and to be in violation of the CWA;

35. Issue an injunction ordering Defendants to immediately operate the Facility in compliance with the NPDES permitting requirements of the CWA;

36. Enjoin Defendants from discharging pollutants from the Facility and to the surface waters or groundwaters surrounding the Facility until such time as Defendants have developed and implemented an adequate SWPPP;

37. Order Defendants to pay civil penalties of up to $64,618.00 per day/per violation for each violation of the CWA pursuant to 33 U.S.C. §§1319(d), 1365(a), and 40 C.F.R. §§ 19.1-19.4;

38. Order Defendants to take appropriate actions to restore the quality of United States waters impaired by industrial activities taking place at the Facility;

39. Order Defendants to pay RIVER WATCH's reasonable attorneys' fees and costs (including expert witness fees), as provided by 33 U.S.C. § 1365(d) and applicable California law; and

40. Award such other and further relief as may be just and proper.

| | | |
|---|---|---|
| DATED:  March 23, 2023 | | LAW OFFICE OF JACK SILVER |
| | | By:  *s/ Jack Silver* |
| | | Jack Silver |
| DATED: March 23, 2023 | | LAW OFFICE OF DAVID J. WEINSOFF |
| | | By:  *s/ David J. Weinsoff* |
| | | David J. Weinsoff |

Attorneys for Plaintiff
CALIFORNIA RIVER WATCH